UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Case Number: 17-61923-CIV-MORENO

ISAAC AFLALO,

    Plaintiff,

vs.

EUGENE WEINER,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DISMISSING CASE WITHOUT PREJUDICE

This case arises out of a statement that Defendant Eugene Weiner allegedly posted about Plaintiff Isaac Aflalo on Defendant's Facebook page on June 8, 2017. The statement reads: "Yurim and Isaac took advantage of a old 94plus sick man elder abuse [sic]" (hereinafter referred to as "the Statement"). Plaintiff claims that the Statement is false, and brought the instant action alleging that it constitutes defamation *per se*. Defendant now moves to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has failed to properly state a claim. The Court agrees. Defendant's Motion to Dismiss Plaintiff's Amended Complaint is GRANTED and the case is dismissed without prejudice.

### I. Background

Plaintiff Isaac Aflalo filed this lawsuit against Defendant Eugene Weiner in the Broward County circuit court, alleging defamation *per se* and intentional infliction of emotional distress. This case was timely removed from state court under diversity jurisdiction, and Plaintiff's motion to remand was denied. Defendant moved to dismiss Plaintiff's original complaint, but Plaintiff filed an amended complaint and the Court denied Defendant's motion as moot.

Plaintiff's amended complaint eliminated the claim for intentional infliction of emotional distress, leaving only the claim for defamation *per se*. Defendant now moves the Court to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim of defamation *per se*.

## II. Legal Standard

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions," instead plaintiffs must "allege some specific factual basis for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). This tenet, however, does not apply to legal conclusions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief. *See Iqbal*, 129 S. Ct. at 1950.

## III. Analysis

### A. Count I (Defamation *Per Se*)

Defendant argues that Plaintiff has failed to state a claim for defamation *per se*. Under Florida law[1], to assert a claim for defamation—libel or slander—a plaintiff must establish that:

---

[1] Plaintiff has alleged that the statement was published in Florida, and thus Florida state law is controlling. *Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co.*, 378 F.2d 377, 381 (5th Cir. 1967).

2

"(1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury to another." *Alan v. Wells Fargo Bank, N.A.*, 604 Fed. App'x 863, 865 (11th Cir. 2015)(applying Florida law). Libel (written defamation) may be proven in two ways: *per se* or *per quod*. *Paulson v. Cosmetic Dermatology, Inc.*, Case No. 17-20094-CIV-Scola, 2017 U.S. Dist. LEXIS 88031 (S.D. Fla. June 8, 2017)(citing *Hoch v. Rissman*, 742 So. 2d 451, 457 (Fla. 5th DA 1999)). Libel *per quod* requires the statement to be put in context so as "to demonstrate [its] defamatory meaning or that the plaintiff is the subject of the statement." *Id.* (citations omitted). To allege a claim for libel *per se*, however, the plaintiff need not show any special damages because per se defamatory statements are "so obviously defamatory and damaging to [one's] reputation that they give rise to an absolute presumption both of malice and damage." *Id.* (internal quotations omitted)(citing *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973)). In this case, Plaintiff is only alleging a claim of libel *per se*.

A written publication (like a Facebook post) rises to the level of libel *per se* "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Id.* (quoting *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953). In a libel *per se* action, consideration is given only to the "four corners" of the publication. *Ortega Trujillo v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998)(citation omitted). The statement should not be interpreted in the extreme, but as the "'common mind' would normally understand it." *Id.* (citation omitted). "In a *per se* action, the injurious nature of the statement is apparent from the words in the statement itself and the court consequently takes notice of that fact." *Scobie v. Taylor*, No. 13-60457-CIV-Scola, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013) (citing *Campbell v. Jacksonville Kennel Club Inc.*, 66

So.2d 495, 497 (Fla. 1953)).

Plaintiff alleges that the Statement qualifies as defamation *per se* on two of the three grounds—it imputes Plaintiff with the commission of an infamous crime and it subjects him to hatred, distrust, ridicule, or contempt. But Defendant argues that Plaintiff's claim fails because (1) the Statement fails to charge Plaintiff with committing an infamous crime; (2) the Statement does not subject Plaintiff to public hatred, contempt, or ridicule; (3) the Statement is rhetorical hyperbole; and (4) Plaintiff has failed to plead with reasonable particularity any third party to whom the Statement was made. In response, Plaintiff argues that the Statement is, at the very least, ambiguous and the question of whether it is defamatory *per se* should be left for the jury.

Analyzing the Statement as the "common mind" would understand it, "[w]here the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in…dismissing the complaint for failure to state a cause of action." *Wolfson*, 273 So.2d at 778 (citations omitted). For the reasons explained below, Plaintiff's Amended Complaint is dismissed with leave to amend.

### B. The Statement is Not Defamatory Per Se[2]

#### 1. The Statement Does Not Impute Plaintiff with the Commission of a Felony

The subject Statement reads: "Yurim and Isaac took advantage of a old 94plus sick man elder abuse [sic]." Because the Statement uses the phrase "elder abuse," Plaintiff alleges that Defendant is imputing Plaintiff with "having committed an act which constitutes the infamous crime of elder abuse under Chapter 825 of the Florida Statutes." (D.E. 18, ¶ 18.) Crimes

---

[2] Because this is a claim for defamation *per se*, the Statement must be considered alone, without reference to extrinsic facts and/or innuendo. *Scobie v. Taylor*, No. 13-60457-CIV-, 2013 WL 3776270, at *4 (S.D. Fla. July 17, 2013).With that in mind, the Court notes that Plaintiff amended his original complaint to provide substantially more background facts about the parties and the circumstances surrounding the Statement. While those facts are certainly illuminating as to the genesis of this lawsuit, they are irrelevant for purposes of a defamation *per se* analysis which relies only on the "four corners" of the Statement.

characterized as having an infamous nature are "murder, perjury, piracy, forgery, larceny, robbery, arson, sodomy or buggery." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, n.3 (S.D. Fla. 2014). However, if an offense does not fall into one of these categories, only a felony is considered an infamous crime. *Id.*; *Madsen v. Buie*, 454 So. 2d 727, 729-30 (Fla. 1st DCA 1984)("Under Florida law, a publication is libelous *per se* when it imputes to another a criminal offense amounting to a felony....")(citation omitted). In Florida, "elder abuse," as defined under Chapter 825 of the Florida Statutes, is categorized as a felony.

To survive a motion to dismiss on this ground, Plaintiff must prove that the Statement, as read and understood by the "common mind," suggests that the Plaintiff committed felony elder abuse under Florida law. *Ortega Trujillo*, F. Supp. 2d at 1339. Plaintiff alleges that the Statement refers to Florida Statute Chapter 825, specifically sections 825.103, 825.102(1), and 825.102(3)(a)(2). Those statutes declare the abuse, neglect, and exploitation of elderly persons and disabled adults felonies. Section 825.103, for example, states, in relevant part:

> "Exploitation of an elderly person or disabled" means:
> (1) Knowingly obtaining or using, or endeavoring to obtain or use, an elderly person's or disabled adult's funds, assets, or property with the intent to temporarily or permanently deprive the elderly person or disabled adult of the use, benefit, or possession of the funds, assets, or property, or to benefit someone other than the elderly person or disabled adult, by a person who:
> 1. Stands in a position of trust and confidence with the elderly person or disabled adult; or
> 2. Has a business relationship with the elderly person or disabled adult.

Florida Statute 825.102(1), titled "Abuse, aggravated abuse, and neglect of an elderly person or disabled adult," states:

> "Abuse of an elderly person or disabled adult" means:
> (a) Intentional infliction of physical or psychological injury upon an elderly person or disabled adult;

5

(b) An intentional act that could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult; or
(c) Active encouragement of any person to commit an act that results or could reasonably be expected to result in physical or psychological injury to an elderly person or disabled adult.

Lastly, Florida Statute 825.102(3)(a)(2), defines neglect of an elderly person or disabled adult as "[a] caregiver's failure to make a reasonable effort to protect an elderly person or disabled adult from abuse, neglect, or exploitation by another person."

Accordingly, the "common mind" must read the "four corners" of the Statement—"[Plaintiff] took advantage of a old 94plus sick man elder abuse"—and understand it to mean that not only was Defendant accusing Plaintiff of some form of physical or psychological injury or neglect of an elderly person, but that he was specifically referring to these Florida laws. Defendant maintains that it does not, and in support of his position relies on *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d (1240) (S.D. Fla. 2014).

In *Klayman*, plaintiff brought a defamation action alleging that defendant published a statement on a website that inaccurately accused plaintiff of having been convicted of failure to pay child support in Ohio. *Id.* at 1244-46. Because plaintiff is a Florida resident and failure to pay child support is a felony in Florida, plaintiff claimed that the publication constituted defamation *per se*. *Id.* at 1247. The court, however, ultimately found that the statement did not impute a criminal offense amounting to a felony because failure to pay child support is a misdemeanor in Ohio. *Id.* at 1248. The court reasoned that "nothing included in the online publication suggests the offense of nonpayment of child support amounts to a felony, as the posting does not list any aggravating factors indicative of a felony or otherwise characterize the offense as a felony. Without more, the publication lacks sufficient detail for a reader to conclude

6

the crime involved is a felony." *Id.* Here, as in *Klyman*, nothing in the Statement supports the conclusion that use of the phrase "elder abuse" amounts to an accusation of a felony. *See also McCormick v. Miami Herald Publ'g Co.*, 139 So. 2d 197 (Fla. 2d DCA 1962) (holding that allegedly defamatory language "should not be interpreted by extremes but should be construed as the common mind would naturally understand it"). As such, when reading the Statement, alone and without innuendo, this Court finds that it does not impute to Plaintiff the crime of elder abuse as defined under Chapter 825 of the Florida Statutes, and therefore it does not qualify as defamation *per se* under the first ground.

### 2. The Statement Does Not Subject Plaintiff to Hatred, Ridicule, or Contempt

Plaintiff also alleges that the Statement rises to the level of defamation *per se* under the second ground. Plaintiff relies on the court's analysis in *Caldwell v. Cromwell-Collier Pub. Co.*, 161 F. 2d 333 (5th Cir. 1947), to argue that even if the Statement does not impute an infamous crime, it subjects him to "hatred, distrust, ridicule, contempt or disgrace." In *Caldwell*, the governor of Florida sued a publishing company for publishing an article that implied he condoned lax law enforcement and lynching. *Id.* The court found that the imputation of a crime was not present (as condoning a crime is not a crime), but that it was enough to "hold one up to public hatred, contempt or ridicule . . . or to prejudice him in his profession, office, occupation or employment." *Id.* at 335. More specifically, the court held that the imputations published "reflect on [plaintiff] in his office." *Id.* at 336. *Caldwell* is inapplicable to this case for two reasons. First, just because *Caldwell* suggests that if a statement fails under prong one then it *can* succeed under prong two, does not mean that it *must* or that it *will*. As here, it does not. Second, the statement and facts surrounding it in *Caldwell* are distinguishable from the Statement in this case. Whereas in *Caldwell* a widely-circulated newspaper published damaging statements about a sitting

governor, here the Defendant wrote a grammatically flawed and incoherent post on his Facebook wall about Plaintiff, a distant relative. Plaintiff has failed to convincingly plead that the Statement, or the circumstances surrounding it (*i.e.*, the parties involved, the medium chosen, the words used), engender the type of hatred, distrust, ridicule, contempt or disgrace that is required to succeed under this prong.

### 3. Rhetorical Hyperbole[3]

A statement is considered rhetorical hyperbole when "the language itself negates the impression that the writer was seriously maintaining that the plaintiff committed the particular act forming the basis of the defamation." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006)(internal quotations and citations omitted). "It is for the Court to decide, as a matter of law, whether the complained of words are actionable expressions of fact or non-actionable expressions of pure opinion and/or rhetorical hyperbole." *Id.* (citing *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 923 (M.D. Fla. 1996)). However, because the Court finds that the Plaintiff has failed to demonstrate that the Statement imputes the Plaintiff with having committed an infamous crime or with subjecting him to hatred, contempt, ridicule or disgrace, it is unnecessary at this time to analyze whether the Statement is rhetorical hyperbole.

### 4. Publication

To successfully plead a claim for defamation *per se*, the plaintiff must allege the "identity of the particular person to whom the remarks were made with a reasonable degree of certainty" to afford the defendant "enough information to determine affirmative defenses." *Ward v. Triple Canopy, Inc.*, 2017 U.S. Dist. LEXIS 115472, at *4 (M.D. Fla. July 25, 2017)(citing *Buckner v.*

---

[3] While Defendant points out that he did not "bring forth" or "mention" the defense of pure opinion that Plaintiff raises in his response, the Court understands why Plaintiff would do so given that "[p]ure opinion is sometimes characterized as 'rhetorical hyperbole.'" *Fortson*, 434 F. Supp. 2d at 1378 (internal citations and quotations omitted).

*Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1027 (Fla. 3d DCA 1981)(additional citations and internal quotations omitted)). Defendant argues that Plaintiff's amended complaint should be dismissed because Plaintiff fails to sufficiently identify the person or entity to whom the defamatory statements were made. The amended complaint states that the Statement was "posted on [Defendant's] Facebook wall on his Facebook page for all to see including persons living in Florida." (D.E. 18, ¶ 12.)

Plaintiff relies on *Internet Solutions Corp. v. Marshall*, 39 So.3d 1201 (Fla. 2010) to argue that a posting on the internet that is accessed by third parties is considered "published" for purposes of a defamation analysis. But the reliance is misplaced. *Internet Solutions* has nothing to do with the proper method of pleading publication in a defamation case. It is a case that involves jurisdictional issues related to internet postings. Moreover, in support of his position, Defendant relies on *Ward v. Triple Canopy*. Defendant's reliance on and explanation of *Ward* is well-taken, while Plaintiff's analysis of the holding falls short. In *Ward*, the plaintiff alleged that the purported defamatory statements were published to: "(1) the Department of State, (2) the Department of Energy, (3) a number of law enforcement agencies . . . and (4) other entities and/or prospective employers." *Id.* at *6. Although Plaintiff is correct that the court found that "the Department of State" and "the Department of Energy" were sufficiently identified, the court also found that the reference to "a number of law enforcement agencies" and "other entities and/or prospective employers" did not sufficiently identify to whom the purported statements were made with a reasonable degree of certainty. Likewise here, Plaintiff's assertion that the Statement was put on Defendant's Facebook wall "for all to see" fails to identify those persons to whom the Facebook post was published with a reasonable degree of certainty. As such, it is also for this reason that the amended complaint should be dismissed with leave to amend.

### 5. Ambiguity

Plaintiff argues that the Defendant is purposefully avoiding describing the Statement as "ambiguous" because when an allegedly defamatory statement is ambiguous, the issue of whether it has a defamatory meaning is for the jury and cannot be resolved by the Court on a motion to dismiss. *Wolfson v. Kirk*, 273 So. 2d 774, 778 (Fla. 4th DCA 1973)("[I]f the court finds the language [of the statement] reasonably capable of two or more meanings one of which is defaming, the trier of fact should determine whether the language was actually understood in its defamatory sense."). However, having found that the "four corners" of the Statement as understood by the "common mind" do not rise to the level of defamation *per se* under either of the alleged prongs, the Court accordingly finds that there is no ambiguity in the Statement.

### IV. Conclusion

Based on the Court's analysis of the claims and arguments for dismissal, Plaintiff's amended complaint is DISMISSED WITHOUT PREJUDICE. Plaintiff may file a second amended complaint by **July 19, 2018**.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ of June 2018.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record